WALDEN, Judge.
This is an appeal from a conviction and sentence for D.W.I. Manslaughter and Leaving the Scene of an Accident.
The evidence elicited at trial established that on the night of September 28, 1984 Ann Smith’s car stalled in the right hand lane of McNab Road, a three-lane road in Fort Lauderdale. Ms. Smith was standing near the open door of the disabled car as two passers-by attempted to jump-start it when she was struck and killed by a hit- and-run vehicle.
Gary Winstead, an eyewitness to the accident, testified that he saw a red Firebird or Camero hit the victim, and that he saw the red car slow down and then drive away. He wrote down the license plate number of the red car and returned to the scene of the accident. When the police arrived on the scene they obtained the license tag number and description of the vehicle from Mr. Winstead and ran a check on it. This produced the name and address of the defendant/appellant, Elizabeth Drumm.
Several officers from the police department went to Ms. Drumm’s house that night. In front of the house was a red Firebird with damage consistent with the damage that would have been caused by the accident. The officers knocked on the front door and Larry Doyle, the defendant’s/appellant’s brother, answered it. The officers asked him who owned the red Firebird in the parking lot and Mr. Doyle told them it was his sister’s. The officers asked if she was home and Doyle told them she was upstairs. Thereupon the officers read Mr. Doyle his Miranda rights and frisked him. They asked if his sister had mentioned anything about an accident. Doyle said that his sister had struck a car and had broken the windshield of her car. Doyle said nothing to indicate that there had been alcohol involved in the accident. The officers then entered into the house without a warrant and without invitation, went upstairs to Drumm’s bedroom, awakened her and brought her downstairs for questioning. Officer Liddicott believed Drumm was advised of her Miranda rights by another police officer, to which Drumm responded that she understood. The officers asked Drumm whether she had been in an accident. Drumm said yes, that she had hit a disabled vehicle. One of the officers observed a moderate smell of alcohol on Drumm. After discussing with Drumm the fact that she was driving and had had a few drinks that evening, the officers placed her under arrest for leaving the scene of an accident and advised her that she had struck a human being. Drumm became distraught and stated she didn’t know she had hit anyone; but just thought she had hit a car.
The officers, having detected the odor of alcohol on Drumm, determined to take her to the hospital for a blood test. On the way to the hospital they advised her of their intention to have her blood drawn. Drumm responded that she was not going to consent whereupon the officers told her that they were going to have her blood drawn regardless of consent. The police told her that they had the right to withdraw blood with or without her consent but that they would note her lack of consent in their report. When they arrived at the hospital Drumm persisted in refusing her consent and the hospital declined to draw her blood. The officers then took her to a second hospital where Drumm maintained her refusal to have her blood drawn. Despite her refusal two blood samples were taken. The first sample, drawn at 12:55 p.m., had a blood alcohol level of .11; the second, drawn at 1:30, had a blood alcohol level of .10. The officers then took Drumm to the parking lot and advised her that they were going to make a video of her. At this point Drumm requested an attorney and was allowed to call one. The officers proceeded to videotape Drumm at the blood alcohol and testing unit of the Broward Sheriff’s office and at the same time conducted a breathalyzer test which produced *396 a .08 reading. Thereafter Drumm was taken to the North Lauderdale Public Safety Department where she was booked on charges of DUI manslaughter and leaving the scene of an accident.
Drumm filed a pre-trial Motion to Suppress Confessions, Statements and Admissions and a Motion to Suppress Physical Evidence and/or Other Evidence Discovered as a Result of Unlawful Entry seeking to exclude statements (made by Drumm which formed the basis for her identification as the driver of the vehicle); to exclude observations of the police officers pertaining to Drumm’s physical appearance; to suppress any other comments which were made by Drumm after the illegal entry; and to exclude the blood samples. At the hearing on the motion the Defense argued that a search and seizure is presumptively unreasonable when it is conducted without a warrant unless the officer’s conduct comes within one of the established exceptions to the warrant requirement. The Defense argued that the police had entered Drumm’s home without a warrant, without probable cause and without permission to enter; that the entry did not fall within the exceptions to the rule; and that the statements made by Drumm to the police were therefore illegally obtained, as were the subsequently obtained blood samples. The Defense also argued that the statements made by Drumm to the police were not voluntary since there was not clear evidence that the officers advised Drumm of her rights but only evidence that officer Liddicott “believed” one of the other officers advised her of her Miranda rights. The State responded that the warrantless entry was justified since exigent circumstances existed; therefore, the evidence which was obtained should not be suppressed. The trial court denied the motions to suppress and explicitly found that although there was no invitation or consensual entry into the home, there were exigent circumstances which justified the entry.
At trial the evidence which was the subject of the motion to suppress was admitted into evidence. Officer Liddicott testified in reference to Drumm’s appearance on the night of the accident and testified that he smelled alcohol on Drumm. He testified that she had told him that Drumm didn’t know she had hit anyone but just thought she had hit a car, and he testified that two blood samples were taken. Several other witnesses testified as to the results of the blood tests and concerning the videotape. Ultimately Drumm was convicted and sentenced to six years in prison followed by five years probation.
On appeal, Drumm argues that the trial court erred in denying the motion to suppress because no exigent circumstances existed to justify the warrantless search and seizure. Further Drumm argues that the fruits of the illegal search; i.e., the observations by the police concerning the defendant’s demeanor, her comments to the police after the illegal entry, and the blood samples; were all tainted by the original illegal search and seizure. The State responds that the trial court correctly found that exigent circumstances existed which justified the warrantless entry into Drumm’s home and her subsequent arrest.
The Fourth Amendment to the United States Constitution, applicable to the states by the Fourteenth Amendment, provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable, and that a search or seizure carried out on a suspect’s premises without warrant is per se unreasonable unless police can show that it falls within one of the carefully designed set of exceptions to this rule. The United States Supreme Court developed the doctrine of “exigent circumstances” in Payton v. New York, 445 U.S. 573,100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). There the Court recognized that *397 there are several situations where the societal costs of obtaining a warrant outweigh the reasons for recourse to a neutral magistrate; however, the Court held that nonconsensual, warrantless entries into a suspect’s home to make a routine felony arrest are prohibited.
Several other cases have established grounds for entry without a warrant. For example, where there is hot pursuit, a fleeing suspect, danger to the arresting officers or danger to the public, then entry without a warrant is justified. See United States v. Kreimes, 649 F.2d 1185,1192 (5th Cir.1981). When there is a likelihood of a suspect’s escape or destruction of evidence then police may arrest and/or enter a home without a warrant. See Benefield v. State, 160 So.2d 706, 710 (Fla.1964).
In the instant case there were no exigent circumstances to justify the failure to obtain a warrant. All that the police knew at the time they arrived at Drumm’s house was that a car which was registered in her name had been involved in the accident and that the car was, at that time, outside her home. The State argues that exigent circumstances existed because the police were fearful that the suspect might escape because the driver had already fled from the scene of the accident, and that they were fearful of their safety because of “what they did not know about the case” or “who was in the house.” In support of this argument the State cites Williams v. State, 403 So.2d 430 (Fla. 3d DCA 1981), and Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). However both of those cases are distinguishable from the instant case.
In Williams the suspect had shot a person in the back and fled. Bystanders identified the defendant as the person who shot the victim. Police officers arrived at the defendant’s apartment within thirty minutes after the shooting and were informed that the defendant was in the room. The police reasonably believed that they were in peril because the defendant was armed and dangerous. And there was a strong likelihood that the defendant would escape if they did not take immediate action.
In Hayden after an armed robbery the police were notified that the suspect had entered a certain house less than five minutes before they reached it. The Supreme Court determined that the officers acted reasonably when they entered the house and began to search for the man whose description they had been given and for the weapon which he used in the robbery which they feared might be used against them.
In the instant case at the time the police arrived at Drumm’s home there was no indication that the suspect had intentionally committed a violent crime (such as a shooting or an armed robbery) which would give rise to a fear that the suspect was likely to attack the police or present a danger to the general public.[1] There was no evidence to support a fear that the suspect might flee or that if the suspect did leave the residence that the police would be unable to arrest her at that point. There was no suspicion that the suspect would escape which would make the situation an emergency which would justify entry without a warrant. Additionally, when the police arrived at the house there was no evidence that drinking had been involved in the accident and, hence, the police had no basis on which to argue that they needed to obtain immediate entry into the house in order to avoid the diminution of blood alcohol content in the suspect’s blood sample. Since the police had no knowledge of exigent circumstance to justify their entry into the home without a warrant, it must be considered an illegal entry.
As to the observations of the police, the blood samples and the videotape, all of this evidence flowed from the police’s initial illegal search and seizure. Had it not been for their illegal presence on the premises, they would not have obtained the evidence which was used against Drumm at her trial. Thus the evidence was tainted and should have been excluded and it was re *398 versible error to deny the motion to suppress.
The conviction is reversed and the cause remanded for a new trial consistent herewith.
Reversed and Remanded.
DOWNEY and DELL, JJ., concur.

. If the suspect had attempted to leave the house and drive the car again, obviously the police would have been able to make an arrest at that point.